IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PATRICIA KAROL FRANKS,            )
                                  )
                    Plaintiff,    )
          v.                      )     1:21CV128
                                  )
KILOLO KIJAKAZI,                  )
Acting Commissioner of Social     )
Security,                         )
                    Defendant.    )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Patricia Karol Franks brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying her claim for social security disability insurance benefits and a period of disability. The Court has before it the certified administrative record and cross-motions for judgment.

**I. PROCEDURAL HISTORY**

In 2018, Plaintiff filed an application for disability insurance benefits and a period of disability alleging a disability onset date of October 13, 2017. (Tr. 18, 307-313.) The application was denied initially and upon reconsideration. (Tr. 18, 222-25, 227-31.) After a hearing, the ALJ concluded on June 11, 2020, that Plaintiff was not disabled under the Act. (Tr. 18-37,

---

[1] President Joseph R. Biden, Jr. appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

164-193.) The Appeals Council denied a request for review on December 11, 2020, making the ALJ's determination the Commissioner's final decision for purposes of review. (Tr. 1-7.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the relevant sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] The ALJ determined at step one that Plaintiff had not

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this sequence forecloses a disability designation and ends the inquiry. *Id.* at 473.

engaged in substantial gainful activity from the alleged onset date of October 13, 2017. (Tr. 20.) The ALJ next found the following severe impairments at step two: obesity, a major depressive disorder, a seasonal affective disorder, and a panic disorder with agoraphobia. (Tr. 20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 23.) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC"), concluding that she could perform medium work except:

> she is restricted from jobs requiring complex decision-making or dealing with crisis situations, or constant changes in routine; she is limited to only occasional interaction with the public supervisors, and coworkers; she is able to stay on task for two-hours at a time, but is limited to jobs performed at a non-production pace; and she is further restricted from concentrated exposure to unprotected workplace hazards.

(Tr. 25.) At step four, the ALJ concluded that Plaintiff could not perform her past relevant work. (Tr. 31.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Plaintiff could have performed. (Tr. 32.)

**IV. ISSUES AND ANALYSIS**

Plaintiff raises three objections. Her first objection is that "[t]he Appeals Council erred in not exhibiting or otherwise considering claimant's treatment records from October 9, 2019, to June 11, 2020[.]" (Docket Entry 10 at 4 (bold and all caps in original).) Plaintiff next contends that "the ALJ erred in his conclusion that 'the Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]'" (*Id.* at 5 (bold and all caps in original).) Last, Plaintiff contends that "the ALJ

3

erred in finding that 'there was not a period of 12 consecutive months since the alleged onset date of October 13, 2017, in which the claimant did not have the residual functional capacity for a wide range of unskilled work at the 'medium' exertional level' subject to limitations stated in finding 5." (*Id.* at 12 (bold and all caps in original).) As explained in detail below, none of these objections warrant relief.

### A. Appeals Council

The Appeals Council must consider evidence submitted by a claimant with the request for review if the additional evidence is (1) new, (2) material, and (3) relates to the period on or before the date of the ALJ's decision. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. *See Wilkins*, 953 F.2d at 96. Evidence is material if there is a reasonable probability that the additional evidence would change the outcome of the decision.[3] 20 C.F.R. § 404.970(a)(5).

Here, after the ALJ issued his decision on June 11, 2020, Plaintiff submitted to the Appeals Council medical records, dated October 9, 2019 through March 13, 2020. (Tr. 33, 38-163.) Plaintiff correctly notes that the evidence she submitted to the Appeals Council shows that she received additional treatment for her mental impairments. (Docket Entry 10 at 4.)

---

[3] Long-standing Fourth Circuit law defined "material" as a reasonable possibility the new evidence would have changed the outcome of the case. *See Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). However, the new version of Section 404.970 increases a claimant's burden from showing a reasonable possibility to a reasonable probability, and make the obligation to show a reasonable probability of a different outcome an additional requirement to showing materiality. The new version of the regulation applies here as it was effective January 17, 2017, with compliance by claimants required by May 1, 2017, *see Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90987-01, 90987, 2016 WL 7242991 (Dec. 16, 2016).

4

However, any contention that this evidence presents a reasonable probability of changing the outcome of her case is unpersuasive. For example, neither Plaintiff's October 24, 2019, psychotherapy session (Tr. 144-47) nor her November 13, 2019 appointment with Dr. Sirajuddin Ismail (Tr. 113-31), a psychiatrist, contains any information demonstrating that Plaintiff should have been found disabled. Both treatment notes indicate that Plaintiff experienced symptoms related to depression and anxiety, but her mental status examination findings are largely benign. (Tr. 120-21, 146-47.) On October 24, 2019, Plaintiff had a neutral mood and affect, normal speech, normal thought processes, and intact attention and memory. (Tr. 146-47.) Likewise, on November 13, 2019, Dr. Ismail noted that Plaintiff had an anxious mood and affect, but also showed appropriate concentration and attention, appropriate speech, logical thought processes, and an intact memory (Tr. 120-21), just as he had on June 11, 2019 (Tr. 559-65, 581-87), which the ALJ considered in his decision (Tr. 28). Thus, as the Appeals Council noted, this evidence is not likely to have changed the ALJ's decision. (Tr. 2.) For the above reasons, the Appeals Council correctly found that the medical evidence submitted to it by Plaintiff did not show a reasonable probability that it would change the outcome of the decision. Therefore, the ALJ's decision should be affirmed.

Plaintiff's arguments to the contrary are not persuasive. She contends that the medical records submitted to the Appeals Council contradict the ALJ's finding that "since she stopped working, the claimant has not sought [] treatment for her purportedly disabling impairments." (Docket Entry 10 at 4 quoting Tr. 30.) While it is true that this evidence shows that Plaintiff sought mental health treatment, it is also true that the evidence shows Plaintiff as presenting

5

with generally normal objective mental health examinations, including no motor abnormalities, normal speech, linear and logical and goal directed thought processes, intact association, denial of suicidal or homicidal ideation, no hallucinations or delusions, and normal attention, memory, language, and fund of knowledge. (Tr. 40-41, 48-49, 52, 66, 73, 101-102, 107, 120-21, 126, 146-47, 149, 158-59, 161.) Plaintiff does point to a few limited instances within the medical evidence supplied to the Appeals Council in which she ended a session early, seemed distracted, or did not maintain eye contact well. (Docket Entry 10 at 5 referencing Tr. 146, 108, 88.) Nevertheless, this does not change the fact that Plaintiff's mental status examinations were generally normal throughout most of the medical evidence she supplied to the Appeals Council. (Tr. 40-41, 48-49, 52, 66, 73, 101-102, 107, 120-21, 126, 146-47, 149, 158-59, 161.) Plaintiff has failed to show that this medical evidence could possibly (much less probably) change the outcome of this case.

### B. The Listings

Plaintiff next asserts, without elaboration, that the ALJ erred by concluding that she did not meet or equal a listing. (Docket Entry 10 at 5-6.) The only listings Plaintiff references in making this argument are Listings 12.04 and 12.06 (*id.* at 6), and so the Court will address each in turn. As explained in greater detail below, this argument is not persuasive.

The listings are examples of medical conditions that ordinarily prevent a person from any gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also* 20 C.F.R. § 404.1525(a). A claimant's severe impairment generally "meets" a listing if it "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [one-year] duration requirement." 20 C.F.R. § 404.1525(c)(3); *Zebley*, 493 U.S. at 530 ("For a claimant to

6

show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). An impairment or combination of impairments generally medically equals a listing when it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a)-(b); *Zebley*, 493 U.S. at 531 ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.").

An adult claimant whose severe medically determinable impairment(s) satisfies a listing is presumed disabled regardless of his or her vocational profile. 20 C.F.R. § 404.1525(c). Thus, proving "listing-level severity" requires the claimant to demonstrate a *greater degree* of physical or mental impairment than the baseline statutory standard of being unable to perform "substantial gainful activity." *Zebley*, 493 U.S. at 532. A claimant who can satisfy a listing, however, "is entitled to a conclusive presumption that he [or she] is disabled." *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (citations omitted). Thus, the ALJ generally must identify the relevant listed impairments and "compare[ ] each of the listed criteria" to the medical evidence in the claimant's record. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).

To meet Listings 12.04 (depressive, bipolar, and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders), a claimant must meet the requirements in paragraph A and either paragraph B or paragraph C. Paragraph A of Listing 12.04 requires medical documentation of a depressive disorder, characterized by five or more specified symptoms, or

7

a bipolar disorder, characterized by three or more specified symptoms. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04(A). Paragraph A of Listing 12.06 requires medical documentation of anxiety disorder, characterized by three of the specified symptoms; panic disorder or agoraphobia, characterized by at least one of two specified symptoms; or obsessive compulsive disorder, characterized by at least one of two specified symptoms. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.06(A). Listings 12.04 and 12.06 include the same criteria in paragraphs B and C. Paragraph B requires extreme limitation of one, or marked limitation of two, of the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04(B), 12.06(B). Paragraph C requires the mental disorder be "serious and persistent," such that the claimant has a medically documented history of the existence of the disorder over a period of at least two years and evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and diminishes the symptoms and signs of the mental disorder and (2) marginal adjustment, meaning the claimant has minimal capacity to adapt to changes in the environment or demands that are not already part of her daily life. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04(C), 12.06(C).

      Here, the ALJ considered Listings 12.04 and 12.06, but found the criteria for those listings was not satisfied. (Tr. 23-24.) Specifically, the ALJ found that because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the

8

Case 1:21-cv-00128-WO-JLW   Document 15   Filed 07/27/22   Page 8 of 16

"paragraph B" criteria were not satisfied. (*Id.*) Likewise, Plaintiff did not meet the "paragraph C" criteria. (Tr. 24.)

These findings are both legally correct and supported by substantial evidence. More specifically, the ALJ set forth the following analysis, which demonstrates that the requirements of the paragraph B or C criteria are not met here:

> In understanding, remembering or applying information, the claimant has a moderate limitation. In her adult function report, filed in December 2018, the claimant stated she has "brain fog," and because of this, she gets confused and gets very nervous around people who are not members of her immediate family. She stated that she is not able to follow written or spoken instructions. However, she also stated she is able to drive a car and use a computer, activities requiring the ability to not only pay attention, but to recall and apply information and use technology. (Ex 6E) Although in her adult function report, the claimant said she was not able to manage her money, and that her husband took care of all the family finances, in his third party report, also filed in December 2018, Mr. Kenneth Franks, the claimant's spouse, stated the claimant is able to manage her own personal finances. (Ex 4E) During her evaluation, Dr. Anthony observed the claimant was alert and oriented, and her intelligence was estimated to be within normal limits. She exhibited some difficulty with her memory, requiring three attempts at a new learning task and requiring clues to recall three of the five recent memory tasks. However, her remote memory was intact and she did well on calculations. Based on her evaluation of the claimant, Dr. Anthony concluded that due to the claimant's noted minor cognitive issues, she is likely to have difficulty understanding, retaining and following instructions. (Ex 2F)
>
> In interacting with others, the claimant has a moderate limitation. Although the claimant indicated she does not like to be around people or leave her home, in her adult function report, the claimant admitted that she is able to go shopping weekly and socializes daily with others via computer. She stated she has no trouble getting along with family, friends, or neighbors, and gets along with authority figures "fine." (Ex 6E) During her

9

Case 1:21-cv-00128-WO-JLW   Document 15   Filed 07/27/22   Page 9 of 16

consultative psychological evaluation by Dr. Anthony, the claimant denied having had any previous discipline problems at work, or having been fired. She also denied having difficulties following rules and regulations, cooperating with authority figures, or interacting with peers. (Ex 2F)

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. As noted previously, in her adult function report, filed in December 2018, the claimant stated she has "brain fog," and because of this, she gets confused. She also stated she is only able to pay attention for a few minutes, and does not finish activities she starts. Yet she also stated she is able to drive a car and use a computer. (Ex 6E) However, during her consultative psychological evaluation, Dr. Anthony noted that based on the claimant's self-report, she does not appear to have significant issues with concentration, persistence or pace when performing activities of daily living. She also observed the claimant exhibited only minor problems on attention tasks. (Ex 2F)

As for adapting or managing oneself, the claimant has experienced a moderate limitation. During her January 2019 evaluation, the claimant told Dr. Anthony she was independent in her personal care, was able to do household chores and prepare meals without assistance, and was able to drive a car. She said she looked after her pets, bathing, feeding, and taking them outside. She also stated she was looking after her mother, who had recently had a stroke. (Ex 6F) In his third party function report, the claimant's husband, Kenneth Franks, said the claimant was independent in her own personal care, and was also caring for her mother after her stroke. He said the claimant was able to care for her pet dog, prepare simple meals, do all the housework, including laundry, dishes, and vacuuming, and that she needed no reminders or encouragement to do these chores. Mr. Franks indicated the claimant is able to drive a car, and that she leaves her home three to four times a week. He said the claimant is able to go shopping, use a computer, and although in her adult function report, the claimant said she was not able to manage her money, Mr. Franks stated the claimant is able to manage her personal finances. (Ex 4E)

(Tr. 23-24, 392-95, 407-413, 530-36, 596-99.)

10

The Court concludes that the previous paragraphs are an adequate analysis of the paragraph B and C criteria and are also supported by substantial evidence. Additionally, Plaintiff makes no argument otherwise regarding the criteria.[4] There was no error here.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff recounts her initial visits to her primary physician when she complained of anxiety and depression. (Docket Entry 10 at 8-9.) She claims that the evidence in the record,[5] in combination with her Appeals Council evidence, demonstrates that she "lacks" concentration and persistence. (*Id.* at 10.) To the extent that Plaintiff improperly attempts to raise a substantial evidence challenge to the ALJ's decision based on the evidence she submitted to the Appeals Council (*Id.* at 9-10), her argument should be rejected. The ALJ cannot be faulted for not considering medical evidence that was not before him. And, as previously explained in addressing Plaintiff's first argument,

---

[4] Plaintiff challenges the ALJ's conclusion that she goes shopping in public unaccompanied by her husband and she contends further that her use of a computer at home does not require her to be in public. (Docket Entry 10 at 10.) However, Plaintiff's husband stated in his third-party function report that she went out alone repeatedly during the week and that she was also able to shop in stores once a week. (Tr. 394.) Additionally, the ALJ's decision makes it clear that Plaintiff was at home when she used her computer to socialize. (Tr. 23 (noting that claimant "socializes daily with others via computer"); Tr. 395.) There was no material error here.

[5] The ALJ here concluded that "Although the claimant has alleged a disability onset date of October 13, 2017, the record reflects she did not seek any formal mental health treatment until May 2019, when she saw Dr. Ismail. However, in January 2019, she underwent a consultative psychological evaluation." (Tr. 21.) In an effort to presumably challenge this finding, Plaintiff points to a few references in the record before the ALJ where she raised her mental health issues with her primary providers and a counselor prior to 2019. (Docket Entry 10 at 8-9 referencing Tr. 503, 499-500, 502, 551, 497, 542.) However, the ALJ acknowledged that Plaintiff "was treated very briefly through her primary care providers at the offices of Novant Health Behavioral Health by nurse practitioner Stella Watson (Ex 1F/9-12); and on two occasions by a counselor, Gail Rogers. There are no treatment notes in the file from Ms. Rogers." (Tr. 26-27, 499-502.) Beyond this, Plaintiff herself admits (Docket Entry 10 at 8-9) that she declined intensive group therapy. (Tr. 502, 551.) Any error here by the ALJ in what constitutes "formal" mental health treatment would be at most harmless.

11

Plaintiff generally presented with an objectively normal mental status, including normal attention and concentration. (Tr. 40-41, 48-49, 52, 66, 73, 83, 101-102, 107, 120-21, 126, 146-47, 149, 158-59, 161.) Further, Dr. Cheri Anthony found no significant issues with concentration, persistence, or pace when performing activities of daily living and observed only minor problems on attention tasks. (Tr. 22, 30, 530-36.)

Finally, the state agency reviewing psychologists opined that Plaintiff had just moderate limitations in concentration, persistence, or pace. (Tr. 201-02, 216-18.) The ALJ also accommodated for any limitations Plaintiff may have in concentrating, persisting, or maintaining pace by restricting her from jobs requiring complex decision-making or dealing with crisis situations, or constant changes in routine; limiting her to only occasional interaction with the public, supervisors, and coworkers; and limiting her to jobs performed at a non-production pace. (Tr. 25.) All this amounts to substantial evidence supporting the ALJ's finding with respect to Plaintiff's ability to concentrate, persist, and maintain pace.[6] (Tr. 24.) Plaintiff's arguments to the contrary (Docket Entry 10 at 8-10) are no more than an impermissible request to this Court to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589.

Additionally, to the extent Plaintiff claims that the ALJ erred when assessing a letter written on her behalf by her former employer, she is mistaken. (Docket Entry 10 at 11-13,

---

[6] These reasons were also sufficient to partially discount Plaintiff's subjective complaints on the issue of concentration, persistence, and pace. 20 C.F.R. § 404.1529(c)(3) (listing factors).

12

368.)[7] The regulations have no specific articulation requirement regarding how an ALJ should discuss evidence from "nonmedical sources," and the ALJ's explanation here allows for meaningful review. 20 C.F.R. §§ 404.1513(a)(4), 404.1520c(d). The ALJ explained that the letter was "minimally persuasive" because it was based on Plaintiff's subjective statements regarding her functioning, provided little insight into Plaintiff's functioning because it was about the time period while she was addicted to narcotics and still working, and only confirmed that Plaintiff was not receiving sufficient mental health treatment during that time. (Tr. 30.) Because these were good reasons to find the letter unpersuasive, there was no error when assessing the letter from Plaintiff's former employer.

---

[7] The letter in question indicates that Plaintiff's prior position was "extremely time consuming and stressful" and that Plaintiff

> worked as a Project Manager from 2013 until the termination of her employment in December, 2017. Patti's performance had increasingly declined over a period of about 1 to 2 years, with the most significant decline within the last 6-8 months of employment[.] Due to health and mental issues that Patti struggled with, she was consistently absent from work at least 1 week out of each month and then was absent the entire last month of employment. When Patti did report to work, there were multiple occasions where she would just sit and cry and really struggled just to get through the day.

(Tr. 368.) Here, although the ALJ found this letter minimally persuasive, he still concluded that Plaintiff could not perform her past relevant work and could only perform work at a non-production pace, with no more than occasional contact with others, and without complex decision making, crisis situations, or constant changes in routine. (Tr. 25.)

13

### C. RFC

Last, Plaintiff asserts that the ALJ's RFC assessment does not accommodate her inability to concentrate, her need to be absent from work at least once a week, or her inability to interact with the public. (Docket Entry 10 at 12-15.) This argument is not persuasive.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 404.1545; *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Commissioner*, 769 F.3d 861, 865 (4th Cir. 2014). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017) (internal quotation marks and citations omitted). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

In accordance with the relevant regulations and rulings, the ALJ carefully and reasonably reviewed the relevant medical evidence and properly assessed Plaintiff's mental and physical RFC. (Tr. 25-31.) Specifically, the ALJ relied on his assessment of the medical record, including Plaintiff's robust activities of daily living, as well as the medical opinions of record, to conclude that Plaintiff could perform a reduced range of medium work. (*Id.*) Given that "none of the claimant's treating professionals ha[d] provided an assessment of her mental functioning, or indicated that she is unable to perform work activities in any capacity" the ALJ placed significant reliance upon the assessments of the non-examining state agency experts, and concluded that Plaintiff could perform a reduced range of medium work. (Tr. 31 ("In making my function-by-function assessment, I generally agree with the functional limitations imposed by the State agency medical consultants, except that I have found she is now obese, and that her excess weight limits her ability to perform strenuous activities such as heavy lifting."); Tr. 200-02, 216-18.) As demonstrated throughout this Recommendation, this assessment was both legally correct and supported by substantial evidence.

Plaintiff argues that the ALJ's RFC should have included a limitation for "an inability to concentrate, or a need to be absent from work two days" a week. (Docket Entry 10 at 13.) She notes that during the hearing, the vocational expert testified that weekly absences would eliminate all work. (*Id.* at 14; Tr. 192.) To support this restriction Plaintiff relies on the letter written by her former employer. (Docket Entry 10 at 13.) However, as previously explained, the ALJ found this letter was only minimally persuasive for legally sufficient reasons. The ALJ

15

was not required to further restrict Plaintiff's ability to concentrate or include weekly absences in her RFC assessment based upon this letter.

Plaintiff also contends that she should be limited from interacting with the public, again noting the vocational expert testified that this restriction would eliminate all of the jobs he identified. (*Id.* at 14-15; Tr. 190.) To support this restriction, Plaintiff relies on descriptions of her anxious behavior during various appointments; specifically, treatment notes showing Plaintiff checked the time, had a panic attack, was visibly anxious, and did not want to go to group therapy. (Docket Entry 10 at 14-15 referencing Tr. 535, 502, 551.) Contrary to Plaintiff's contentions, none of these notations demonstrate she would be unable to interact with the general public. Indeed, not one of Plaintiff's medical providers, nor the state agency consultants, nor Plaintiff's activities of daily living, indicate that she requires such a significant limitation. Accordingly, the ALJ's RFC assessment fully accommodates Plaintiff's impairments and is supported by substantial evidence.

### V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 8) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED**, and the final decision of the Commissioner be upheld.

/s/ Joe L. Webster
United States Magistrate Judge

July 27, 2022

16

Case 1:21-cv-00128-WO-JLW   Document 15   Filed 07/27/22   Page 16 of 16